CITY OF ROCKY RIVER, Appellant,

v.

CENTER RIDGE HOTEL ASSOCIATES, Appellee.

[Cite as *Rocky River v. Center Ridge Hotel Assoc.* (1989), 61 Ohio App.3d 308.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 54781.

Decided Feb. 27, 1989.

*Russell A. Olson*, Director of Law, and *David J. Matty*, for appellant. *Bernard H. Niehaus*, for appellee.

JOHN F. CORRIGAN, Judge.

Plaintiff-appellant, city of Rocky River (hereafter referred to as "Rocky River" or "the city"), appeals a judgment of the trial court which partially overruled its motion for summary judgment in an action which it had commenced against Center Ridge Hotel Associates, d.b.a. Sheraton Rocky River (hereafter referred to as "Sheraton").[1]

The facts giving rise to this action are not in dispute. In accordance with Chapter 173 of its codified ordinances, Rocky River levies an excise tax of three percent on all revenue which is generated by a hotel or motel's lodging of "transient guests."

Section 173.01(C) of the city's ordinances defines the term "transient guests" as "persons occupying a room or rooms for sleeping accommodations for less than thirty consecutive days."

---

1. Because the judgment entry appealed from disposed of all remaining claims of the parties and determined the action by preventing Rocky River from obtaining judgment, we have concluded that Rocky River has taken this appeal from a final appealable order. See *Rocky River v. Center Ridge Hotel Assoc.* (Oct. 25, 1988), Cuyahoga App. No. 54781, unreported.

Rocky River effects compliance with Chapter 173 by requiring that the owners or operators of all hotels and motels located in the city file monthly tax returns. These returns must indicate gross monthly rental receipts, less that portion of the gross receipts derived from the lodging of "permanent residents," and less that portion which is derived from providing services other than lodging. These sums are deductible from the gross receipts. The balance remaining is determined to be derived solely from the lodging of transient guests, and three percent of this figure is then assessed.

After filing a four-count complaint against Sheraton for collection of unpaid transient occupancy taxes, Rocky River discovered that from June 1983 through July 1987, Sheraton had deducted $64,441.45 from its gross revenues and had attributed this sum to the lodging of permanent rather than transient guests.

It is undisputed that Sheraton had received the $64,441.45 in connection with lodging agreements which it has or had with various airlines, whereby Sheraton rents a number of rooms to the airline on a monthly basis, for the use of airline personnel. Sheraton's agreement with Continental Airlines, Inc. is typical. It establishes a range of rooms to be kept available for the airline, requires the airline to provide Sheraton with a monthly list of crew members authorized to receive lodging and provides that the airline will pay the room rental charge for all authorized crewmen on a monthly basis.

Sheraton thus takes the position that the revenue derived from such airline contracts is not subject to the transient occupancy tax because the "persons" to whom lodging is provided are the various airlines, and said occupation continues for thirty consecutive days or longer.

The city, however, rejected Sheraton's argument and added a fifth count to its complaint, seeking recovery of the disputed $64,441.45. The city argues that it is irrelevant that Sheraton has monthly rental agreements with various airlines, because the individual crew members who actually use the rooms are indeed transient guests, thus subjecting the revenue derived from the airline contracts to the transient occupancy tax.

On April 8, 1987, the city moved for summary judgment on all five counts of its amended complaint. On June 30, 1987, the trial court granted this motion with respect to the four counts for recovery of unpaid taxes. This ruling is not germane to the instant appeal. The remaining count, pertaining to recovery of the airline-generated revenue, was set for hearing at a later date.

Thereafter, on October 31, 1987, the trial court ruled that the airlines which contracted with Sheraton for room rental, and not the individual airline personnel, are in fact the Sheraton's guests, for purposes of determining whether the transient occupancy tax is due. The court then concluded that

"[i]f the agreement between [Sheraton] and [the] airline was for less than 30 consecutive days an excise tax is due pursuant to Section 173.01 et seq."

Rocky River timely commenced the instant appeal, challenging the trial court's ruling with respect to the airline-generated revenue. For the reasons set forth below, we modify the judgment of the trial court, and, as modified, we affirm.

## I

For its single assignment of error, Rocky River contends that the trial court erred in overruling that portion of its motion for summary judgment which pertained to the airline-generated revenue. In support of this assignment of error, Rocky River presents three arguments, which we will consider in turn.

## A

For its first argument, Rocky River claims that the individual airline personnel who actually occupy Sheraton's rooms, and not the airlines themselves, must be considered Sheraton's guests. Rocky River then urges us to conclude that the individual personnel are indeed "transient guests" pursuant to the ordinary meaning of the term "transient guests." We decline to do so.

We first note that the "ordinary meaning" rule of statutory construction is inapplicable where the statute defines the words to be construed. *In re Gwinn* (Bankr.S.D. Ohio 1983), 34 B.R. 936, 945. Thus, because Rocky River Ordinances Section 173.01(C) defines "transient guest," the plain meaning of this phrase is irrelevant.

In addition, we note that the city's power to enact Chapter 173 is derived from R.C. 5739.024(B). See 1981 Ohio Atty. Gen. Ops. No. 81-032, at 2–120. R.C. 5739.024(B) provides in pertinent part:

"The legislative authority of a municipal corporation or the board of trustees of a township that is not wholly or partly located in a county that has in effect a resolution levying an excise tax pursuant to division (A) of this section may by ordinance or resolution levy an excise tax not to exceed three per cent on transactions by which lodging by a hotel is or is to be furnished to transient guests.  * * * "

Thus, while Rocky River Ordinances Section 173.01(C) adopts the definition of "transient guest" set forth in R.C. 5739.01(N), *i.e., "persons* occupying a room or rooms for sleeping accommodations for less than thirty consecutive days [emphasis added]," we also find the. definition of "person" contained within R.C. 5739.01(A) relevant to our determination. This code provision provides:

" 'Person' includes individuals, receivers, assignees, trustees in bankruptcy, estates, firms, partnerships, associations, joint-stock companies, joint ventures, clubs, societies, corporations, the state and its political subdivisions, and combinations of individuals of any form."

■ Therefore, in light of R.C. 5739.01(N) and 5739.01(A), we conclude that *entities* such as airline corporations, and not just individual employees, may be found to be occupying a room or rooms even where such rooms are in fact physically used by employees of that entity. Accord *Parkbrook, Inc. v. Bowers* (Feb. 23, 1962), 11 Ohio BTA Decns., No. 47106, unreported.

In *Parkbrook, Inc. v. Bowers, supra,* the state Tax Commissioner sought to assess a transient guest tax on revenue which Parkbrook obtained from airline contracts, whereby, as in this case, the airline would pay for monthly room rentals for the use of various airline employees throughout the month.

The Board of Tax Appeals held that by operation of its contract with the hotel, the airline, and not the individual airline employees, was the "person," within the definition of R.C. 5739.01(A), which occupied, *i.e.,* used or controlled, the various hotel rooms which were specified in the contract. The Board of Tax Appeals stated:

" * * * The facts in this matter are clear beyond question. Airline personnel actually sleep in the rooms which the airlines lease from the [hotel], however, the employee who sleeps in the room does not pay [the hotel] a consideration therefor, nor does the [hotel] furnish the room to the airline employee. The [hotel] furnishes the rooms to *the airlines*, who, in turn, as lessees of the [hotel], *use* the rooms to house their employees.

" * * * Therefore, it appears that the [airline] would be a transient guest for all rentals which are less than thirty consecutive days in duration, and it also appears to be an equally well founded conclusion that [the airline] would not be a transient guest for the rental of rooms which are rented by it, for its use, for periods in excess of twenty-nine consecutive days in duration." (Emphasis in original.) *Id.* at 5.

Similarly, in this situation, the airline which pays for the room actually controls, *i.e.,* occupies, it. While the rooms are physically used by various airline employees throughout the month, this use is allowed solely by consent of the airline which is effected by the airline's prior submission of a "Crew Room Accommodation Authorization" or similar authorization document. In short, the airline controls the rooms in question in order to house its employees.

In accordance with the foregoing, we agree with the trial court's conclusion that Sheraton obtained the disputed $64,441.45 by providing lodging to various

airlines, not individual airline employees, and the decision of the trial court is affirmed in this regard.

## B

■■ Rocky River next argues that the existence of cancellation clauses in each of the airlines' rental agreements causes the airlines to be "transient guests" and subjects the airline-generated revenue to its transient occupancy tax.

We find the existence or nonexistence of the cancellation clauses irrelevant in and of itself. Rather, it is an airline's actual use of its cancellation privileges which is relevant to tax liability, as this affects the continuity of that airline's occupation of each room mentioned in the contract. That is, if the Sheraton actually rents all rooms described in an airline agreement to that airline for thirty consecutive days, with no cancellations, then none of the revenue derived will be subject to the transient occupancy tax. If, however, the airline cancels its reservation of one or more rooms during the course of the thirty-day contract period, then continuity of occupation of that room is broken, and the revenue generated from this room is then subject to the transient occupancy tax. Thus we hold that transient tax liability must be assessed on a room-by-room basis. Accord *Parkbrook, Inc. v. Bowers, supra.*

The decision of the trial court is therefore modified insofar as it indicates that the duration of the *agreement* between Sheraton and an airline determines whether the transient occupancy tax may be assessed. Rather, we conclude that it is the duration of the airline's occupation, when considered on a room-by-room basis, which determines whether and to what extent the transient occupancy tax may be assessed. The airline is properly considered a "transient guest," within the definition of Rocky River Codified Ordinances Section 173.01, with respect to all rooms which it occupies for less than thirty consecutive days, and the revenue derived from this occupancy is subject to the transient occupancy tax. The airline is ·not a "transient guest" with respect to all rooms which it occupies for thirty or more consecutive days, however, and revenue generated from this occupancy is not subject to the city's transient occupancy tax.

## C

Finally, Rocky River argues that the airline-derived revenue is subject to the transient occupancy tax because Sheraton cannot show an exemption from this tax in clear and unmistakable terms. We disagree.

■ Generally speaking, statutes relating to an exception or exemption from taxation are strictly construed, and one claiming under such exemption

or exception must affirmatively establish his right thereto. *National Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus.

In addition, Section 173.02(C) of Rocky River's codified ordinances provides:

"For the purpose of the proper administration of this Chapter and to prevent the evasion of the tax, it is presumed that all lodging furnished by hotels in this city to transient guests is subject to the tax until the contrary is established."

We find that Sheraton will in fact meet its burden pursuant to *National Tube Co. v. Glander, supra,* and Section 173.02(C), if it can show, for each room which is the subject of a monthly airline rental contract, that airline personnel occupied this room for thirty or more consecutive days.

The decision of the trial court is hereby modified as to the manner of determining liability for the transient occupancy tax, and the cause is remanded for factual findings in order that the amount of taxes due may be determined.

*Judgment modified
and cause remanded.*

KRUPANSKY, P.J., and MATIA, J., concur.